UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Case No. 1:23-cv-1624
KEZIA HENDERSON,

                Plaintiff,

   -against-

PROHEALTH MEDICAL MANAGEMENT, LLC,
OPTUM, INC., KRISTINA BALRAM-MOHAMED,
individually, and LISBETH TEEMSA,
individually,

                Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands
A Trial By Jury

Plaintiff, Kezia Henderson, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief, complains of Defendants as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"), the New York State Executive Law, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries she has suffered as a result of being discriminated against on the basis of her actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, interference with protected rights, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617, 42 U.S.C. §12101, *et seq.*, 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about December 27, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about December 7, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8. Plaintiff is a disabled female resident of the State of New York, County of Queens.

9. At all times material, Defendant PROHEALTH MEDICAL MANAGEMENT, LLC (hereinafter referred to as "PROHEALTH") was and is a foreign limited liability company duly existing under the laws of the State of Delaware.

10. At all times material, Defendant PROHEALTH was and is a foreign limited liability company authorized to conduct business, and which does conduct business, under the laws of the State of New York.

11. At all times material, Defendant PROHEALTH was a medical services provider which operated a pediatric clinic located at 108-48 70th Rd, Forest Hills, NY 11375.

12. At all times material, Defendant OPTUM, INC. (hereinafter referred to as "OPTUM") was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

13. At all times material, Defendant OPTUM was and is a foreign business corporation authorized to conduct business, and which does conduct business, under the laws of the State of New York.

14. At all times material, Defendant OPTUM was and is a national conglomerate of health care service providers.

15. Upon information and belief, Defendant OPTUM operates as Defendant PROHEALTH's successor-in-interest.

16. Defendant OPTUM and Defendant PROHEALTH's management and labor operations are functionally the same, in that Defendant PROHEALTH transferred its workforce and operations to Defendant OPTUM.

17. Upon information and belief, Defendant OPTUM has taken over Defendant PROHEALTH's day-to-day business operations, including hiring, firing, and processing payroll for their employees.

18. Upon information and belief, Defendant PROHEALTH's employees (and Plaintiff's former coworkers) have been rehired by Defendant OPTUM to perform the same work at the above-mentioned pediatric clinic located at 108-48 70th Rd, Forest Hills, NY 11375.

19. Upon information and belief, Defendant OPTUM is a mere continuation of Defendant PROHEALTH.

20. In the alternative, Defendant OPTUM and Defendant PROHEALTH operate as a single integrated enterprise.

21. At all times material, Defendant KRISTINA BALRAM-MOHAMED (hereinafter referred to as "BALRAM-MOHAMED") was and is a female resident of the State of New York.

22. At all times material, Defendant BALRAM-MOHAMED was and is a "Practice Manager" at Defendant PROHEALTH and Defendant OPTUM.

23. At all times material, Defendant BALRAM-MOHAMED was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

24. At all times material, Defendant LISBETH TEEMSA (hereinafter referred to as "TEEMSA") was and is a female resident of the State of New York.

25. At all times material, Defendant TEEMSA was and is a "Director of Human Resources" at Defendant PROHEALTH and Defendant OPTUM.

26. At all times material, Defendant TEEMSA was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

27. Defendant PROHEALTH, Defendant OPTUM, Defendant BALRAM-MOHAMED, and Defendant TEEMSA are collectively referred to as "Defendants."

28. At all times material, Plaintiff was an employee of Defendants.

29. At all times material, Defendant PROHEALTH and Defendant OPTUM were qualified employers under the FMLA in that they engaged in an industry affecting commerce, and employed 50 or more employees within a 75-mile radius of Plaintiff's location for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

30. At all times material, Plaintiff was a qualified employee under the FMLA. Plaintiff worked for Defendants for at least 12 months and for at least 1,250 hours during those 12 months.

## MATERIAL FACTS

31. On or about June 28, 2014, Plaintiff began working for Defendant PROHEALTH as a "Receptionist" at its 108-48 70th Rd, Forest Hills, NY 11375 pediatric clinic.

32. Plaintiff's job duties included scheduling appointments, welcoming patients, answering phone calls, processing payments, and other administrative tasks.

33. During her first four (4) years at Defendant PROHEALTH, Plaintiff worked approximately forty (40) hours per week, on a staggered and/or rotating schedule.

34. Throughout her employment, Plaintiff was a dedicated and reliable employee who performed all of her duties without issue.

35. In or around April 2018, Plaintiff was diagnosed with plantar fasciitis, a medical condition characterized by chronic heel pain, and which is aggravated by prolonged periods of standing and walking. Crucially, Plaintiff's plantar fasciitis was exacerbated by her daily commute to work, which required her to stand and wait for her bus route. Furthermore, because Plaintiff's bus route ran less frequently after 6:00pm, any shift that Plaintiff worked, and which ended after 6:00pm, significantly increased the amount of time she spent standing. Similarly, Plaintiff's bus route ran less frequently on weekends.

36. Accordingly, on or about April 26, 2018, Plaintiff applied for intermittent and/or reduced schedule FMLA leave and submitted medical documentation to support her request.

37. In her application, Plaintiff's doctor recommended that Plaintiff: 1) work a reduced schedule of twenty-four (24) hours per week; 2) only be scheduled to work Monday through Wednesday; and 3) not be scheduled on shifts that ended after 6:00 P.M.

38. The doctor's recommendation also constituted a request for a reasonable accommodation and put Defendants on notice of Plaintiff's disability.

39. On or about May 21, 2018, Defendant PROHEALTH approved each of Plaintiff's requests, with an effective retroactive date of April 26, 2018, and lasting through February 11, 2019.

40. For the next few months, Defendant PROHEALTH honored Plaintiff's reasonable accommodation requests.

41. However, in or around November 2018, Defendant BALRAM-MOHAMED started to retaliate against Plaintiff based on her need for reasonable accommodations and/or FMLA leave.

42. For example, on or about November 20, 2018, in Plaintiff's 2018 Annual Performance Review, Defendant BALRAM-MOHAMED criticized Plaintiff for her alleged attendance issues.

43. However, this was pretext, because despite Defendant BALRAM-MOHAMED's false accusation, Plaintiff did not have any "attendance issues." Rather, Plaintiff was working a reduced schedule pursuant to her approved intermittent FMLA leave. Defendant BALRAM-MOHAMED was simply inconvenienced by Plaintiff's reduced work schedule and wanted to make Plaintiff appear unreliable in order to justify terminating her employment.

44. In fact, on or about January 23, 2019, Defendant BALRAM-MOHAMED called Plaintiff in her office and actually asked Plaintiff when her FMLA leave was going to expire.

45. Plaintiff told Defendant BALRAM-MOHAMED that her intermittent and/or reduced schedule FMLA leave was approved through February 11, 2019.

46. Then, at the end of the meeting, Defendant BALRAM-MOHAMED gave Plaintiff a write-up for allegedly abandoning her job post on January 7, 2019.

47. However, this too was pretext. On the date in question, Plaintiff was assigned to work in Defendants' "phone room." At one point during her shift, Plaintiff left the phone room to assist a coworker (first and last name currently) at the front desk. The coworker requested Plaintiff's assistance because her computer malfunctioned, and she needed help checking in patients.

6

48. As further evidence of pretext, Plaintiff's coworker, Valerie Purdie, who was also assigned to the phone room that day, and also left her post to help the front desk, did not receive a write-up.

49. Accordingly, on or about January 24, 2019, Plaintiff emailed Manager of Employee Relations, Kathleen Kildfuff-Conlon, and complained about Defendant BALRAM-MOHAMED's pretextual write-up. The email stated, in relevant part:

> "[Defendant BALRAM-MOHAMED] called me into her office and asked me about my FMLA, then she told me she was writing me up … for having sat at the front desk on January 7, 2019[.] … That same day [] another coworker [Ms. Purdie] who was supposed to be in the phone room sat at the front desk. [Ms. Purdie] was not working … **I feel that the write-up is discriminatory and personal**."

50. On or about January 25, 2019, Ms. Kildfuff-Conlon emailed Plaintiff and scheduled a telephone call to discuss her complaint against Defendant BALRAM-MOHAMED.

51. On or about January 29, 2019, Plaintiff telephoned Ms. Kildfuff-Conlon and reiterated her complaint against Defendant BALRAM-MOHAMED. Ms. Kildfuff-Conlon instructed Plaintiff to provide a written statement outlining her allegations against Defendant BALRAM-MOHAMED. Plaintiff complied. However, Ms. Kildfuff-Conlon never followed up with Plaintiff regarding her verbal or written complaints.

52. Over the next two (2) years, Plaintiff continued to request, and was granted, reasonable accommodations for her disability in the form of intermittent and/or reduced scheduled FMLA.

53. Then, on or about May 4, 2020, Plaintiff was at work when she developed a fever.

54. Therefore, due to COVID-19 health protocols, Defendant BALRAM-MOHAMED instructed Plaintiff to go home, and to not return to work until her fever subsided.

55. Curiously, several days later, Senior Human Resources Partner, Maria Ugarate, called Plaintiff and informed her that according to Defendant BALRAM-MOHAMED, there was now no

available positions for her at Defendant PROHEALTH's pediatric clinic, and that she was being transferred to one of the company's urgent care facilities (which at the time, was conducting COVID-19 testing).

56. Plaintiff ultimately objected to the transfer because she feared that working at the urgent care facility would increase her likelihood of contracting COVID-19. Nevertheless, Ms. Urgarte insisted that there was "no need" for Plaintiff at the pediatric clinic.

57. However, this was pretext because soon after this conversation, Plaintiff learned that her position and job duties at the pediatric clinic had been assumed by Jessica Collado, an employee who had previously worked at another Defendant PROHEALTH medical office.

58. Plaintiff also discovered that she was one of the only employees at the pediatric clinic who was being forced and/or obligated to transfer to the urgent care facility.

59. In fact, almost every employee who expressed reservations about being transferred to the urgent care facility did not have to, and was allowed to continue working at the pediatric clinic.

60. In reality, Defendant BALRAM-MOHAMED wanted to transfer Plaintiff to the urgent care facility to replace her, to avoid accommodating her requests for reasonable accommodations and/or FMLA, and in retaliation for her complaint of discrimination.

61. Therefore, because of this material change in the terms and conditions of her employment, Plaintiff took a one-month leave of absence, and was reinstated to her original position at the pediatric clinic in or around the beginning of June 2020.

62. That same month, Plaintiff renewed her application for intermittent and/or reduced schedule FMLA leave for her plantar fasciitis. Again, Plaintiff requested: 1) a reduced work schedule; 2) to only be scheduled Monday through Wednesday; and 3) to not be scheduled on shifts that ended after 6:00 P.M. Plaintiff also submitted medical documentation to support her requests.

63. On or about June 11, 2020, Plaintiff received a letter from Defendant PROHEALTH's third-party benefits administrator, "FMLA Source," which indicated that Plaintiff had "requested more leave time than [she was] entitled to under the [FMLA]." The letter further stated that Plaintiff's "**leave request [would] still be reviewed as a possible reasonable accommodation under the Americans with Disabilities Act**."[1] Finally, the letter confirmed that Plaintiff was approved for FMLA leave "on an intermittent basis," with an effective retroactive date of May 23, 2020, and lasting through May 10, 2021.

64. However, this letter provided no information regarding the type, frequency, and/or duration of intermittent FMLA leave to which Plaintiff was entitled.

65. Therefore, over the next two (2) months, Defendant BALRAM-MOHAMED completely ignored Plaintiff's reasonable accommodation requests.

66. More specifically, Defendant BALRAM-MOHAMED prohibited Plaintiff from working a reduced schedule and repeatedly scheduled Plaintiff on weekend shifts.

67. Accordingly, on or about July 6, 2020, Plaintiff emailed Defendant BALRAM-MOHAMED and complained about her ongoing refusal to accommodate her disability.

68. Specifically, Plaintiff wrote:

> "As you are aware, I have a medical condition and as such I was never supposed to work on Saturday nor on Sunday. ADA medical forms were given to my doctor which were then completed and returned to [Defendants] … To reiterate, I am only able to work on Monday, Tuesday, and Wednesday."

69. As expected, Defendant BALRAM-MOHAMED did not respond to Plaintiff's email.

70. Over the next year, Defendants continued to prohibit Plaintiff from working a reduced schedule and continued to schedule Plaintiff on weekend shifts.

---

[1] This constituted an acknowledgement of Plaintiff's disability and continued need for reasonable accommodations.

71. Additionally, in further retaliation, on multiple occasions throughout 2020 and 2021, Defendant BALRAM-MOHAMED falsely reported and/or documented Plaintiff's "off days" as days in which Plaintiff purportedly utilized intermittent FMLA. This was intended to cause Plaintiff to exhaust FMLA leave prematurely, and interfere with her protected rights.

72. On or about March 25, 2021, Plaintiff received another letter from FMLA Source, confirming that her "intermittent basis" FMLA leave was set to expire on May 10, 2021.

73. Accordingly, in or around the beginning of April 2021, Plaintiff renewed her application for intermittent and/or reduced schedule FMLA. Plaintiff intended her request to apply to her next twelve (12) month period of FMLA entitlement, from approximately May 2021 to May 2022.

74. Once again, Plaintiff requested: 1) a reduced work schedule; 2) to only be scheduled Monday through Wednesday; and 3) to not be scheduled on shifts that ended after 6:00 P.M. Plaintiff also submitted medical documentation to support her requests.

75. However, by this point, Defendants were no longer willing to accommodate Plaintiff's disability and connived a pretextual scheme to justify terminating her employment.

76. Specifically, on or about April 28, 2021, Defendants' Director of Human Resources, Defendant TEEMSA, telephoned Plaintiff and accused her of altering and/or falsifying the medical documentation submitted in connection with her recent intermittent FMLA application.

77. During the call, Defendant TEEMSA stated that she had contacted Plaintiff's physician, Steven J. Levitz, D.P.M., "*to get some greater clarity*" regarding the accommodations requested in Plaintiff's FMLA application. Defendant TEEMSA then claimed that Dr. Levitz did not certify Plaintiff's medical need to only work Monday through Wednesday, and accused Plaintiff of adding this information to her application after receiving Dr. Levitz's certification.

78. Plaintiff denied Defendant TEEMSA's false accusation, and informed Defendant TEEMSA that her FMLA application was completed with, and approved by Dr. Levitz.

79. Specifically, and in order to be transparent, Plaintiff explained that she herself inserted and/or entered the requested reasonable accommodations requested on her April 2021 FMLA application, but assured Defendant TEEMSA that Dr. Levitz ultimately reviewed and certified the application before it was submitted to Defendants.

80. Nevertheless, Defendant TEEMSA insisted that Plaintiff altered her FMLA application, and that Dr. Levitz did not certify her medical need to only work Monday through Wednesday.

81. At the end of call, Defendant TEEMSA assured Plaintiff that she would contact Dr. Levitz to get further clarification regarding the discrepancy with her application.

82. Then, later that day, Plaintiff was called into a meeting with Defendant BALRAM-MOHAMED. Defendant TEEMSA participated in this meeting via telephone.

83. During the meeting, Defendant TEEMSA terminated Plaintiff's employment.

84. Defendant TEEMSA stated that Plaintiff was being terminated for falsifying and/or altering information on her FMLA application. Defendant TEEMSA also claimed that she followed up with Dr. Levitz, who allegedly confirmed that Plaintiff altered the document.

85. In response, Plaintiff assured Defendant TEEMSA that she did not alter the application, and asked Defendant TEEMSA if she could contact Dr. Levitz during their meeting to address any miscommunication concerning the document.

86. Unsurprisingly, Defendant TEEMSA denied Plaintiff's request.

87. Defendants' stated reason for terminating Plaintiff is pretext.

88. Interestingly, on or about May 1, 2021, *during a conversation Plaintiff recorded*, Dr. Levitz confirmed that he never accused or implied that Plaintiff falsified or altered her FMLA

application. Rather, Dr. Levitz explained that he was contacted by Defendant TEEMSA on April 28, 2021 and asked if Plaintiff's request to work to only Monday through Wednesday was medically necessary. Dr. Levitz informed Plaintiff that he responded to this question by substantiating Plaintiff's need to work Monday through Wednesday, but at Defendant TEEMSA's *insistence*, suggested that Plaintiff's workdays could vary as long as she only worked three (3) days per week.

89. Additionally, during this same conversation, Dr. Levitz's female assistant (first and last name currently unknown) informed Complainant that Defendant TEEMSA had stated that she would fax Dr. Levitz a copy of Complainant's FMLA application for him to review, but never did.

90. This is because Defendant TEEMSA had no intention of doing so, and wanted to seize on a minor discrepancy with Plaintiff's FMLA application to justify the company's unlawful termination decision.

91. Crucially, Dr. Levitz's statements to Defendant TEEMSA on or about April 28, 2021 did not contradict the medical certification he provided Defendants in support of Plaintiff's FMLA application.

92. On or about April 28, 2021, Defendants terminated Plaintiff in order to avoid engaging in the interactive process and to avoid having to provide Plaintiff with reasonable accommodations and/or FMLA protected leave in the future.

93. Defendants failed to engage in the interactive process.

94. Defendants would not have harassed or discriminated against Plaintiff but for her actual and/or perceived disability.

95. Defendants would not have retaliated against Plaintiff but for her complaints of discrimination and need for reasonable accommodations and/or FMLA protected leave.

96. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

97. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

98. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

99. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all of the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER THE FAMILY AND MEDICAL LEAVE ACT
## RETALIATION & INTERFERENCE

100. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. §2615 of the Act states as follows:

> (a) Interference with rights
> (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

102. Defendants interfered with Plaintiff's rights under the above sections, discriminated against Plaintiff, and terminated Plaintiff from her employment because she requested and/or needed FMLA-protected leave.

### AS A SECOND CAUSE OF ACTION
### UNDER THE ADA
### DISCRIMINATION
### (Not Against Individual Defendants)

103. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. Plaintiff claims that Defendant OPTUM and Defendant PROHEALTH violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

    a. General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

105. Defendant OPTUM and Defendant PROHEALTH violated the above and Plaintiff suffered numerous damages as a result.

106. Plaintiff hereby makes a claim against Defendant OPTUM and Defendant PROHEALTH under all applicable paragraphs of 42 U.S.C. §12101 *et seq*.

### AS A THIRD CAUSE OF ACTION
### UNDER THE ADA
### RETALIATION AND INTERFERENCE
### (Not Against Individual Defendants)

107. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

108. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint as if same were set forth herein fully at length.

109. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

110. Defendant OPTUM and Defendant PROHEALTH violated Plaintiff's above rights as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

111. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

112. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … disability … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

113. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff on the basis of her actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation, and wrongful termination.

114. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law §296.

15

### AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### <u>RETALIATION</u>

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

117. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against the Plaintiff because of her opposition to their unlawful employment practices and needing and/or requesting reasonable accommodations for her disability.

### AS A SIXTH CAUSE OF ACTION
### UNDER STATE LAW
### <u>AIDING AND ABETTING</u>

118. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

119. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

120. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>DISCRIMINATION</u>

121. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

122. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … disability … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

123. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of her actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation, and wrongful termination.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>RETALIATION</u>

124. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

125. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii)

17

   commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

126. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because she opposed their unlawful employment actions and needed and/or requested reasonable accommodations for her disability.

**AS A NINTH CAUSE OF ACTION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
<u>AIDING AND ABETTING</u>**

127. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

128. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

129. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

 **WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in an unlawful discriminatory practice prohibited by the FMLA, the ADA, the New York State Executive Law, and the New York City Administrative Code, and that Defendants discriminated against Plaintiff on the basis of actual and/or perceived disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, interference with protected rights, retaliation, and wrongful termination;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff liquidated damages under the FMLA;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: March 2, 2023
New York, NY

By: */s/ Max C. Bracero, Esq.*
**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Max C. Bracero, Esq.
45 Broadway, Suite 430
New York, New York 10006
212-248-7431